# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

July 19, 2013

The Honorable Margo K. Brodie
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Michael Kissi</u>  (13-CR-51)

Dear Judge Brodie:

I write on behalf of our client, Michael Kissi, to inform the Court that we believe the government has withheld critical <u>Brady</u> evidence from the defense. Consequently, we have been prejudiced in our preparation of Mr. Kissi's defense. Because of these violations, we respectfully request that the Court hold an immediate evidentiary hearing to determine the full extent of the government's misconduct and that the Court bar the government from enforcing a protective agreement that bars the defense from making use of exculpatory draft translations of audio and video recordings.

## I.     BACKGROUND AND PROCEDURAL HISTORY

On December 24, 2012, the main cooperator in this case, Tonny Twumasi Ankrah, was arrested at JFK International Airport after admitting that he was attempting to smuggle heroin into the United States. After his arrest, Twumasi agreed to cooperate with the government. He made consensually monitored telephone calls to a co-conspirator in Ghana, following which he received a text message from another co-conspirator in Ghana providing him with the contact information for a third co-conspirator with a Maryland phone number. The co-conspirator's text informed Twumasi that the Maryland phone number belonged to the individual who would pick up the drugs. Under the supervision of HSI agents, Twumasi called the Maryland number and was told by a domestic co-conspirator that he would send someone to pick up the drugs. After passing all 100 pellets of heroin he had swallowed, Twumasi checked into a hotel in the Bronx, New York and HSI agents set up audio and video surveillance of Twumasi.

Two days later, on December 26, 2012, Michael Kissi, unaware that he was involved in a drug transaction, arrived at the Bronx hotel and made contact with Twumasi. Mr. Kissi's conversations with Twumasi were conducted in Twi and recorded by the agents.

All of these conversations occurred in either the Ghanaian languages of Twi and Ga, or in English. Without being able to understand the conversations between them, but believing that Mr. Kissi was a knowing participant inTwumasi's drug transactions, HSI agents entered Twumasi's hotel room and arrested Mr. Kissi.

Our office was appointed to represent Mr. Kissi on December 27, 2012. By superceding indictment dated January 25, 2013, the government has charged Mr. Kissi with four counts related to a Conspiracy to Possess Heroin with Intent to Distribute in violation of 21 U.S.C. § 841.

In early March of 2013, during the discovery process, the government informed defense counsel that it had draft translations of several of the recorded conversations between Mr. Kissi and Twumasi from Twi to English and premised disclosure of these draft translations upon the parties entering into a protective order prohibiting the defense from using the draft translations both in pre-trial litigation as well as during trial. The parties executed the agreement and the government turned over a series of draft translations. See Defendant's Exhibit A.

It was not until these draft translations were turned over – which the government would only do after the defense had entered into the stipulation without knowing the content of the translations -- that the defense learned that there were actually two separate draft translations of the events of December 26, 2012, produced by two separate court-certified Twi interpreters. One of the translations was produced by interpreter Naomi Appiah. The other translation was produced by interpreter Kobina Ampah. These two draft translations differ significantly in several material respects. In several instances, inculpatory statements that the government seeks to attribute to Mr. Kissi appear in one translation, but not in the other translation. One of the translations provides a significantly more exculpatory account of the transactions than the other. The government would not have disclosed these documents unless the defense agreed in advance to be bound by its protective agreement.

By letter dated June 17, 2013, we served the government with a number of discovery requests. Specifically, we requested "any transcription of a videotape, or any other audio or video recordings, and/or agent's papering notes." See Defendant's Exhibit B at 3. We also requested any information "indicating, in whole or in part, that Michael Kissi was not involved in or did not have knowledge of the alleged offense, and/or that any of the requisite elements required to prove any of the charged offenses could not be met. Additionally, this request includes all information that calls into question the accuracy, credibility, and bias of the government's sources or witnesses." Id. at 5. Finally, we also requested "the names and addresses of all persons who would contradict or impeach any government testimony or other evidence." Id. at 7.

By response dated July 1, 2013, the government indicated that it had turned over its draft translations and that it would advise the defendant if it became aware of any additional statements by the defendant. With respect to our Brady request, the

2

government acknowledged that it "is aware of its obligations pursuant to <u>Brady</u> and <u>Giglio</u> and their progeny and will comply accordingly" but made no further disclosures.

By letter dated July 12, 2013, the government served defendant's counsel with notice that it intends to call Kobina Ampah, the author of one of the draft translations, as an expert at trial.  The government informed the defense that it "anticipates that Mr. Ampah's testimony at trial will describe how he translated statements and communications contained on certain audio and video recordings from Twi/Pigeon English into English." Defendant's Exhibit C. Mr. Ampah's draft translation contains several inculpatory statements that do not appear in Ms. Appiah's draft translation.

Recently,  we learned that, in addition to the translation work done by Mr. Ampah and Ms. Appiah, there was a third translation of the events of December 26, 2012 by a third interpreter.  Upon information and belief, this third translation contains a potential third exculpatory version of the conversations of December 26, 2012.  Moreover, we have information that suggests that at least one of the interpreters was asked to revisit her translation by HSI agents who expressed displeasure with the content of the translations in this case.  Specifically, Ms. Appiah was requested, through an intermediary, to review her translations and asked to change her account to include additional inculpatory statements that were not previously included in her translation.

The identity of this third interpreter as well as the specific instructions HSI agents gave to the interpreters remain unknown to the defense.  Moreover, we have been informed that Mr. Ampah was sequentially the third interpreter to review and translate the videotape in this case.  It appears that the government first submitted the December 26, 2012 videotape to an unidentified interpreter who produced a largely exculpatory account of the events that day.  After reviewing that interpreter's translation, the government then solicited a translation from Naomi Appiah, who produced a more inculpatory account.  But the government was still not satisfied.  It sought a translation from a third interpreter, Mr. Ampah, who produced a third even more inculpatory translation.  The sequence of these translations, the specific instructions given to the interpreters, and the identity and notes of the original interpreter were not disclosed to the defense.

The government, noting our informal request that the government not enforce this agreement, requests that the Court bar the defense from making use of these transcripts. We are similarly available on either of the government's proposed dates and ask that the Court schedule an evidentiary hearing on either of these dates.

## II. THE GOVERNMENT'S FAILURE TO DISCLOSE BOTH THE IDENTITY OF AN EXCULPATORY WITNESS AND INCONSISTENT NOTES AND TRANSCRIPTS OF THE RECORDINGS CONSTITUTES A <u>BRADY</u> VIOLATION

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." Material that is "favorable to the accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of the government's witnesses. <u>United States v. Bagley</u>, 473 U.S. 667, 676-77 (1985). There is no good faith exception to <u>Brady</u> and the prosecution is chargeable with knowledge of information known to law enforcement officers involved in the investigation or prosecution of the case. See <u>Kyles vs. Whitley</u>, 514 U.S. 419, 438-39 (1995). A <u>Brady</u> claim has three elements: 1)The evidence at issue must be favorable to the accused; 2) that evidence must have been suppressed by the government; 3) and prejudice must have ensued. <u>Strickler v. Greene</u>, 527 U.S. 263, 281 (1999).

Here, it appears that the government had the December 26, 2012 recordings containing Mr. Kissi's statements translated in succession by three different translators. Upon information and belief, the first translator, whose identity remains unknown to the defense, submitted a largely exculpatory account of Mr. Kissi's involvement in this offense. The second translator, Naomi Appiah, produced a second translation, which was inculpatory in some respects and exculpatory in other material respects. Moreover, Ms. Appiah was requested to revise a previous translation with specific instructions from law enforcement agents to include more inculpatory information. The third interpreter in succession, Kobina Ampah, produced an arguably inculpatory account of the arrest. The defense has not been informed what instructions or direction he received in producing his account of the December 26, 2013 arrest.

With full knowledge that the translations of the same recorded statements contained material discrepancies that may have been produced under the influence of law enforcement agents, the government sought and continues to seek to prevent the defense from making use of critical impeachment evidence by premising, sight unseen, disclosure of this <u>Brady</u> material on an unconscionable protective agreement. The prejudice stemming from the government's conduct is made more pronounced now that it intends to elicit testimony from Mr. Ampah about his translation of the videotape of this arrest. Finally, information concerning both the identity and translations of the original interpreter as well as any instructions the agents gave to all three of the interpreters remains unknown to the defense.

For the reasons stated in this letter, this information is 1) favorable to the accused; 2) suppressed by the government, and 3) the defense has been prejudiced both by the non-disclosure of this information as well as the government's unconscionable use of the

4

stipulation to prohibit the defense from meaningfully cross-examining a government witness.

## A. THE INFORMATION AT ISSUE IS FAVORABLE TO THE ACCUSED

Material that is "favorable to an accused" includes information that impeaches the credibility of the government's witnesses. See Bagley, 473 U.S. at 676-77. Moreover, the fact that evidence may have incriminatory as well as exculpatory aspects does not preclude its treatment as Brady material. See United States v. Rivas, 377 F.3d 195, 199-200 (2d Cir. 2004). Finally, the exculpatory value of information is not negated by the fact that the government has other evidence that contradicts the exculpatory information. See United States v. Rittweger, 524 F.3d 171, 181 (2d Cir. 2008).

The material at issue is clearly favorable to Mr. Kissi. Upon information and belief, the events of December 26, 2013 have been translated in succession by three different Twi interpreters. Upon information and belief, the draft translations by the first two interpreters do not attribute key alleged inculpatory statements to Mr. Kissi, even after law enforcement agents allegedly requested that the interpreters revise these translations to include particular inculpatory statements. Finally, the sequential timing of the three translations is favorable to the accused as it appears that the government "shopped around" the audio and video tapes until it obtained a translation it found to be acceptably inculpatory. The information not only calls into question the reliability of the translation that the government will seek to admit but also reflects a pervasive investigative bias that undermines the reliability of the government's case generally. See United States v. Abel, 469 U.S. 45, 52 (1984)("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

However, the defense cannot make meaningful use of this information to defend Mr. Kissi at trial without full disclosure from the government concerning the identity of the first interpreter as well as the specific instructions federal agents gave to each of the three interpreters. Moreover, since we have not yet received final translations from the government, we still do not know whether Mr. Ampah's previous draft has impeachment value. The defense must receive this information sufficiently in advance of trial to investigate it and prepare to use it for cross-examination. Accordingly, the defense asks that (1) the Court either order the government to immediately turn over all information in its *or its law enforcement agents'* possession concerning the translations of Mr. Kissi's statements, or schedule an immediate evidentiary hearing on this issue; and (2) strike the protective order prohibiting the defense from using the draft translations as contrary to the interests of justice.

## B. THE GOVERNMENT HAS SUPPRESSED THIS EXCULPATORY EVIDENCE

To be suppressed for purposes of <u>Brady</u>, information must be "known to the prosecution, but unknown to the defense." <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976).  With respect to knowledge, the government is responsible for information known to law enforcement officers involved in the investigation or prosecution of the case. <u>Kyles v. Whitley</u>, 514 U.S. 419, 438, 439 (1995)("This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").

Here, the government has suppressed material exculpatory evidence both through nondisclosure and through troubling gamesmanship.  It has failed to provide the defense, despite specific discovery requests and the requirements of <u>Brady</u> with information concerning a third interpreter, and concerning law enforcement direction to the interpreters as to the content of the translations of Mr. Kissi's statements.  It has used a protective stipulation, without entering into which the defense would never have gained access to the draft translations, as a shield to prevent cross-examination of its agents and a government expert concerning impeachment evidence that goes to the heart of Mr. Kissi's defense: whether or not he knew he was going to pick up drugs.  While it is common practice for the parties to enter into such a protective stipulation to facilitate the disclosure of transcripts before they are final, ordinarily such agreements contemplate non-material changes in a transcript, not two materially different transcripts by two different interpreters that bear directly on a defendant's *mens rea*.  The exculpatory value of these contradictions must have been clear to the government since they solicited a third translation even after being in possession of two translations.  We are troubled that the government would use such a tactic to preclude the defense from making full use of these exculpatory contradictions.

In its July 18, 2013 letter, the government argues that Rule 16 of the Federal Rules of Criminal Procedure imposes no obligation to provide draft translations to the defendant.  While Judge Ross has previously ruled that Rule 16 does not require disclosure of draft translations, here, the requirements of both <u>Brady</u> and <u>Giglio</u> compelled production of exculpatory information.  The case government's citation is inapposite to the instant case.  Unlike the case in <u>Mayes</u>, here the government withheld two separate and materially contradictory translations produced by two different interpreters from the defense before asking it to enter into the protective agreement.  The differences between these two draft translations are far more significant than the "simple discrepancies" contemplated by Judge Ross in <u>Mayes</u>.  <u>United States v. Mayes</u>, No.10-CR-473(ARR), 2011 WL 5320976, at *3.  Since we are barred from effectively using this information, we respectfully submit that the government has unconstitutionally suppressed this exculpatory information for purposes of <u>Brady.</u>

## C.  THE DEFENSE HAS SUFFERED PREJUDICE BY THE GOVERNMENT'S NONDISCLOSURE OF EVIDENCE

While the full extent of the prejudice from the government's non-disclosure of this evidence remains unclear since the non-disclosure continues to this day, it is clear that the prejudice exacted upon our trial preparations is significant.  At trial, the central issue will be whether or not the government can prove beyond a reasonable doubt that Michael Kissi knew he was involved in a drug transaction.  Crucial to the government's proof will be the statements, found on the government's recordings, that it will seek to attribute to Mr. Kissi through its interpreter, Kobina Ampah.  The government's non-disclosure of impeaching information concerning the translations of the defendant's statements has prejudiced our preparation of Mr. Kissi's defense in at least four ways.

First, since the government has now served expert notice and asserted that it intends to elicit testimony from Mr. Ampah about his translation of the recordings, it is proper to challenge, on cross-examination, the accuracy of his conclusions by use of his prior notes and draft translations.  Additionally, to the extent that the government solicited translations from other interpreters who produced more exculpatory translations, the identity, transcripts, and notes of those interpreters are critical so that we can challenge the credibility of the government's expert witness.

Second, both the chronology and specific instructions of the investigating agents are evidence of bias that undermines the credibility of the government's expert interpreter as well as the government's law enforcement agents.  Here, it appears that the government provided the audio and video recording taken on December 26, 2012 to three different interpreters before finding an interpreter who produced a sufficiently inculpatory account that satisfied the government.  Unfortunately, since we do not know the precise content of these instructions, nor do we know the identity of the first interpreter, we do not know the full extent of prejudice we have suffered in preparing our defense and we cannot effectively prepare Mr. Kissi's defense.

Third, while our office has commonly entered into protective agreements in order to facilitate the expedient disclosure of evidence, in this instance, the government's insistence on enforcing this protective agreement is troubling.  While one would normally expect a translation to go through minor non-material changes, here, upon initial receipt of the draft translations, the defense came to learn that the government was in possession of two separate transcriptions of the same event that differed significantly in several material respects.  These two different transcriptions were produced by two different interpreters at the behest of the government and, knowing that one of these versions was more exculpatory than the other, the government nevertheless insisted on a protective agreement, and has refused to set that agreement aside.  Mr. Kissi was entitled to this

critical exculpatory information pursuant to <u>Brady</u> regardless of whether we entered into this agreement and thus it should have been turned over without a protective agreement.

Finally, in response to a specific request for our client's statements, the government responded that it had already disclosed Mr. Kissi's statements.  With respect to our request for <u>Brady</u> evidence, the government informed us that it was aware of its obligations but made no disclosures.  As we informed the government in our discovery letter, we intended to rely upon the government's representations (or non-representations) as we prepared for trial.   It now appears that there is a third exculpatory witness whose identity, despite our diligent investigation, remains unknown to us. In fact, it is only because of our investigation that we know that this witness even exists.  Because of the government's non-disclosure, we are at a point, a week before trial, in a case where Mr. Kissi faces a mandatory minimum of ten years of incarceration, where we have not had the opportunity to interview these witnesses to assess whether it would be prudent to offer their testimony in Mr. Kissi's defense.

In this instance, the stipulation agreed upon by both parties is procedurally unconscionable because it is oppressive and arises out of an inequality of bargaining power resulting in the absence of any meaningful choice.  The government cannot premise disclosure of exculpatory information upon a promise by the defense not to use it to defend a criminal case.  To do so would violate the Sixth Amendment.

## CONCLUSION

Here, the government has suppressed <u>Brady</u> evidence through gamesmanship and through non-disclosure. Our incomplete understanding of the circumstances of the preparation of transcripts of statements attributed to the defendant continues to prejudice our preparation of Michael Kissi's defense. Accordingly, we respectfully request that the Court either order immediate disclosure of all information pertaining to the translation of the recordings or schedule an immediate evidentiary hearing on this issue. In addition, we ask that the Court bar the government from enforcing its protective agreement in the particular circumstances of this case.

Respectfully Submitted,

Len Hong Kamdang
Counsel to Michael Kissi
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11216
(718)407-7414

Jacqueline Newsome
Legal Intern
Federal Defenders of New York, Inc.

Courtesy Copies to:

Chambers of Margo Brodie (via hand delivery)

Government's Counsel of Record (via ECF and E-Mail)

Michael Kissi (by U.S. Mail)

9

# DEFENDANT'S EXHIBIT

# A

PSS:EDP
F.#2013R00009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      STIPULATION

   - against -

      13 CR 2 (MKB)

MICHAEL KISSI,

        Defendant.

- - - - - - - - - - - - - - - -X

    IT IS HEREBY STIPULATED AND AGREED by and between the
United States, by Assistant United States Attorney Erik D.
Paulsen, and defendant MICHAEL KISSI, by his counsel Len Kamdang,
Esq., as follows:

    1.   Draft phone call translations or video recording
translations provided to the defendant by the United States
and/or copies, redacted copies, or any portions thereof,
including those portions incorporated into reports by the United
States (hereinafter "Draft Translations"), have neither been
finalized nor reviewed for accuracy by the United States.  All
documents provided by the United States containing Draft
Translations will be labeled with Bates numbers beginning "GOV-
DT-KISSI."

    2.   Draft Translations cannot be used, introduced,
quoted from, or relied upon by the defendant for any purpose in
any brief, letter, pre-trial proceeding or at the trial itself.

3.    The use of any Draft Translations by the defendant is limited to trial preparation for this case, and the Draft Translations may not be used at trial by the defendant in any form or for any purpose whatsoever, including use in cross-examination of any witness.

4.    Draft Translations may not be furnished, directly or indirectly, by the defendant or defense counsel to any third-party, other than legal staff of the attorney who has signed this stipulation if such persons agree not to furnish the Draft Translations to others.

5.    All Draft Translations, including all copies, whether in the possession of defense counsel or the defendant, will be returned to the United States when final translations are provided by the United States, when the jury is sworn in this case or upon the resolution of this case.

6.    Any violation of this Stipulation and Order will

require the immediate return of all Draft Translations to the

United States.

Dated: Brooklyn, New York
     March 18, 2013

                                                LORETTA E. LYNCH
                                                United States Attorney
                                                Eastern District of New York

                            By: _____

                                                Erik D. Paulsen
                                                Assistant U.S. Attorney
                                                (718) 254-6135

_____
Len Kamdang, Esq.
Counsel to MICHAEL KISSI

3

# DEFENDANT'S EXHIBIT

# B

# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

June 17, 2013

Mr. Erik Paulsen
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Michael Kissi</u> (13-CR-051)(MKB)

Dear Mr. Paulsen:

Please accept this letter *in lieu* of a formal motion for discovery. In accordance with Federal Rule of Criminal Procedure 16, I write to acknowledge the discovery afforded thus far, and to request additional discoverable material. Please let me know if my understanding of the material I have received thus far conflicts with the government's understanding in any way.

1. <u>Documents</u>

I have received the following documents to date:

a. A DVD containing video recordings
b. A CD containing audio recordings
c. A redacted report of investigation
d. Draft transcripts of recorded conversations
e. A search warrant and supporting affidavit
f. A CBP inventory document

I request unredacted copies of any pages or portions of the above-mentioned reports that I have not yet received. In the alternative, please provide a written summary of any redacted content so that I may evaluate whether a request for an *in camera* inspection of these documents would be appropriate. I further request a copy of any other law enforcement reports, witness statements, or other documents that I have not yet received that are in the government's possession, or which become available to the government, relating to the above-captioned case.

To the extent that any of these documents are not discoverable because they are statements made by prospective government witnesses, pursuant to Rule 16(a)(2), I request that these documents be provided if, and when, it is determined that the author or witness is not going to be a government witness.

1

## 2. Prior Record

It is my understanding that Michael Kissi has no previous criminal contacts. If the government learns of any criminal contacts, including youthful offender adjudications and/or juvenile offender adjudications or juvenile criminal contacts, not contained in the government's criminal history printout, that it will seek to use against Michael Kissi for any purpose in the above-captioned case pursuant to Rule 16(a)(D), please inform me before July 1, 2013 so that I may file the appropriate motions. If I have not heard from the government as to any additional criminal contacts that it intends to use against Mr. Kissi by July 1, 2013, I will assume that the government does not intend to introduce any specific prior criminal contacts against Michael Kissi and I will rely on that understanding as I prepare for trial.

## 3. Radio Communications

I request a copy of all 911 calls, radio runs, lookouts, and all other radio and cellular communications relating to this case. I request that I be permitted to not only listen to any existing recorded communications prior to trial, but also make a copy of the recorded communications I listen to. Until I have had the chance to listen to, and make a recorded copy of any such communications, I ask that they be preserved.

## 4. Statements

I am not in possession of any formal statement made by Michael Kissi in this case. In fact, it is my understanding that Michael Kissi asserted his right to counsel when agents attempted to interrogate him.

Pursuant to Rules 16(a)(1)(A) and 16(a)(1)(B), I request any statements made by Michael Kissi whether written down or not. Please disclose to me and make available for inspecting, copying, or photographing, the following: any relevant statements made by Michael Kissi within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government or any law enforcement officer participating in this case; the portion of any written record containing the substance of any relevant oral statement made by him, whether before or after arrest, in response to interrogation by any person then known to Michael Kissi to be a government agent; and any testimony of Michael Kissi before a grand jury which relates to the offense charged in the above-captioned case. I also request that the government disclose the substance of any other oral statement made, whether before or after arrest, by Michael Kissi in response to interrogation by any person then known to Michael Kissi to be a government agent, if the government intends to use that statement at trial.

Please disclose by July 1, 2013 the substance and details of any statements made by Michael Kissi of which the government intends to use at any fact-finding hearing including: where the statements were made; to whom the statements were made; when

2

the statements were made; and the context of the conversation or interview in which these statements were allegedly made. If I have not heard from the government by July 1, 2013, I will assume that there are no other oral statements made by Michael Kissi that the government will seek to use at a fact-finding hearing and I will rely on that understanding as I prepare for trial.

Please produce the substance of all statements and expressive conduct of Michael Kissi in response to all Miranda warnings, as well as all statements or questions concerning Fifth or Sixth Amendment rights. See Wood v. Ercole, 644 F.3d 83 (2d Cir. 2011) ("I think I should get a lawyer" sufficient to invoke the Fifth Amendment); United States v. McElroy, 697 F.2d 459 (2d Cir. 1982). This includes both oral and written Miranda warnings and any form signed or refused by Michael Kissi.

Additionally, I request the production of any memorializations of the statements attributed to Michael Kissi, including but not limited to, any transcription of a videotape, any other audio or video recordings, and/or agent's papering notes. If I have not heard from the government by July 1, 2013, I will assume there are no statements or memorializations of statements made by Michael Kissi and will rely on that understanding as I prepare for trial.

5. Tangible Evidence

Pursuant to Rule 16(a)(1)(E), I request the production of both documents and tangible objects. I request permission to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are in the possession, custody, or control of the government, and which are material to the preparation of Mr. Kissi's defense, or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to Michael Kissi. Please note that the term "material" applies equally to evidence that is inculpatory as well as that which is exculpatory to Michael Kissi. Pursuant to Rule 16(a)(1)(C), if any of these objects exist, please inform me by July 1, 2013 so that I can make arrangements to view and copy or photograph the objects.

The government's March 27, 2013 discovery letter indicated that the government was in possession of mobile phones, a cloth bag, and the contents of the cloth bag. Please preserve these items as we would like to examine them.

Apart from these items, if I have not heard from the government by July 1, 2013, I will assume there is no other tangible evidence in the government's possession and I will rely on that understanding as I prepare for trial.

6. Identification Procedure

Please provide me with any material relating to any identification procedure that may have been performed in this case. If I have not heard from the government by July 1,

2013, I will assume that there were no identification procedures performed in this case and I will rely on that understanding as I prepare for trial.

7. Scientific Tests

The government's March 27, 2013 discovery letter indicated that I would be provided with copies of any examinations or tests conducted in connection with this case, in addition to being provided with any reports that were generated from any examinations or tests conducted. To date, I have not received any notice of such examinations or tests. Please provide me with any copies and/or reports of any scientific tests by July 1, 2013 or a written summary of any scientific tests the government is expecting so that I may file the appropriate pre-trial motions as well as consult experts to interpret the results of any scientific tests. If I have not heard from the government by July 1, 2013 I will assume that there were no examinations or tests conducted in the above-captioned case and I will rely on that understanding as I prepare for trial.

8. Experts

Pursuant to Rule 16(a)(1)(g), I request that I be provided with a written summary of expert testimony that the government intends to use during its case in chief at trial. The government has indicated through its July 1, 2013 letter that it will inform me of any expert that the government intends to call at trial. I request that a summary describing any such expert's opinions, the bases and the reasons therefore, and the witness's qualifications be provided to me by July 1, 2013

9. Evidence of Uncharged Crimes, Wrongs, or Other Misconduct

The government has not indicated that it intends to elicit any information related to any crimes, wrongs, or other acts that occurred before December 25, 2012 related to Michael Kissi. If the government plans to introduce any specific evidence of past crimes, wrongs, or other acts relating to Michael Kissi, please inform me by July 1, 2013 so that I may file the appropriate pre-trial motions. If I have not heard from the government by July 1, 2013 I will assume there is no evidence of prior crimes, wrongs, or other acts that will be used against Michael Kissi at trial and I will rely on that understanding as I prepare for trial.

10. Excited Utterances and Present Sense Impressions

I request notice regarding any excited utterances or present sense impressions the government will be seeking to introduce at trial. Because Crawford v. Washington, 541 U.S. 36 (2004), invalidated much of the existing case law with respect to these exceptions to the general rule against admitting hearsay, I request 15 days advance notice of the government's intention to introduce any such statements. Moreover, this letter serves as

4

an objection to any and all hearsay violating the contours of the holding of <u>Crawford</u>, in particular with respect to excited utterances and present sense impressions. <u>See</u> <u>also</u> <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009) (forensic evidence is not an exception to the <u>Crawford</u> rule).

11. *<u>Brady</u> Request*

Under the doctrine announced in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972), I am making a general request for all exculpatory information. This request includes all information known to the government, or by the exercise of due diligence may become known, which is favorable to the defense, whether or not technically admissible in court, and which is material to the issues of guilt and/or punishment. This request extends to all information known by all law enforcement or other government agencies involved in this case whether or not personally known to the individual Assistant U.S. Attorney assigned to the case. This request also includes all information indicating, in whole or in part, that Michael Kissi was not involved in or did not have knowledge of the alleged offense, and/or that any of the requisite elements required to prove any of the charged offenses cannot be met. Additionally, this request includes all information that calls into question the accuracy, credibility, and bias of the government's sources or witnesses. <u>See</u> *e.g.*, <u>Smith v. Cain</u>, 132 S. Ct. 627 (2012); <u>Kyles v. Whitely</u>, 541 U.S. 419 (1995).

I am entitled to this material in advance of trial so that I can effectively prepare a defense. In addition, I cannot advise my client about a potential plea offer until I can discuss with him all exculpatory information to which I am entitled.

I also make the following specific <u>Brady</u> requests:

A. All prior convictions and juvenile adjudications of all government witnesses.

B. All information in the possession of the government indicating that (a) any government witness has had a pending juvenile or criminal case on or since the date of the offense in this case; (b) any government witness was arrested, pled guilty, had a trial, or was sentenced on or since the date of the offense in this present case; (c) any government witness was on juvenile or criminal parole or probation on or since the date of the offense; and (d) any government witness now has or has had any other liberty interest that the witness could believe or could have believed might be favorably affected by government action. With respect to this information I request docket numbers, dates, and jurisdictions for all such cases. <u>Davis v. Alaska</u>, 415 U.S. 508 (1974).

C. Any prior inconsistent statements, non-corroborative statements, or other witness statements that the witness's trial testimony will not reflect. <u>See</u> <u>United States v. Enright</u>, 579 F. 2d 980, 989 (6th Cir. 1978). This request includes all rough notes, including notes of both prosecutors and agents. I ask that the government immediately ensure that all notes and recordings are preserved. This

request also includes the recording, in any form, of all communications between the government and law enforcement regarding the witness's testimony.

D. Any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substances, or has ever abused or become addicted to alcohol. United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North Carolina, 637 F.2d 213 (4th Cir. 1980).

E. All information that any government witness and/or informant was under the influence of alcohol, narcotics, or any other drug at the time of observations about which the witness will testify and/or the informant informed, or that the witness's/informant's faculties of observation were impaired in any way.

F. All information indicating that any government witness has been or is, at any point from the time of the offense through the day of trial, a government informant. See United States v.Bagley, 195 S. Ct. 3375 (1985). If any witness is, or has been, an informant, I request disclosure of:

> (i) the length and extent of the witness's informant status;

> (ii) the amount of compensation that has been paid to the informant in connection with this case;

> (iii) any non-monetary assistance provided or promised to the informant, including, but not limited to, assistance in avoiding or minimizing harm from charges pending against the informant at the time of the offense through the day of trial;

> (iv) all statements made to the informant that promised benefits would not be provided without cooperation in connection with this case. "Benefit" refers to any monetary compensation, assistance of the prosecution, or the court, concerning pending charges against the informant, or any other sort of consideration;

> (v) the nature of assistance provided to the informant prior to this case, including the number of occasions and form of help.

G. All deals, benefits, or promises of benefits, threats, or statements that the benefit would not be provided without cooperation, that were made to any government witness in connection with this case. See Giglio v. United States, 405 U.S. 150 (1972). "Benefit" is defined in point (d) above, supra.

H. Any information that tends to indicate a government witness's dubious conduct including anything in a police officer's personnel file indicative of dubious behavior.

I. Perjury, or any finding of a lack of credibility or veracity, by any government witness at any time, whether or not adjudicated and whether or not in connection with a specific case.

J. Any information regarding any prior "bad act" of a government witness that may bear upon the veracity of the witness. This includes, but is not limited to, any information that the complainant was engaged in illegal activity immediately prior to the alleged offense in the above-captioned case.

K. All information that any government witness has made prior false accusations, including but not limited to, prior complaints to the police or enforcement agencies that did not result in a conviction.

L. Any other information tending to show a government witness's bias in favor of the government or against the defendant, or that otherwise impeaches a witness's testimony, including pending and closed C.C.R.B. or equivalent complaints/cases, which involved facts similar to those in this case, whether resolved for or against the officer. See generally Brinson v. Walker, 547 F.3d 387, 393 (2d Cir. 2008)("the accused must be given a broad opportunity to cross-examine adverse witnesses for bias.")

M. The names and addresses of all persons who would contradict or impeach any government testimony or other evidence.

N. Any failure by any witness at any point in the interviewing or debriefing process to provide the police or the government with information testified to at trial.

O. Any indication of threats or acts of aggression toward Michael Kissi by arresting officers or undercover officers.

P. With respect to identifications, I request the names and addresses of any persons who:

> (i) are government informants, cooperating witnesses, or other percipient witnesses unknown to the defendant. Roviaro v. United States, 353 U.S. 53 (1957); United States v. Wilkins, 326 F.2d 135 (2d Cir. 1964). This request includes, without limitation: [information relating to third-party culpability or other case specific info];

> (ii) identified some person other than Michael Kissi as involved in the alleged offense. I also request the name and address of the party that was

identified. See Cannon v. Alabama, 558 F.2d 1211 (5th Cir. 1977), cert. denied, 434 U.S. 1087 (1978); Grant v. Alldredge, 498 F. 2d 376 (2nd Cir. 1974);

(iii) failed to identify Michael Kissi as a perpetrator of the alleged offense when asked to do so in any identification procedure. See United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964);Gibson v. United States, 566 A.2d 473 (D.C. 1989);

(iv) gave any description(s) of the perpetrator of the alleged offense which in some material respect (e.g. height, weight, clothing, race, complexion, age) differs from Michael Kissi. See Frezzell v. United States, 380 A.2d 1382, 1385 (D.C. 1972), cert. denied, 438 U.S. 931 (1978); See also Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968).

Q. Any evidence that any witness gave a version of events relating to this matter that differed from any other version of events given by the same witness. This includes inconsistent statements by the cooperating witness as well as all other potential government witnesses.

In addition to the above-listed requests, pursuant to the ABA Standards for Criminal Justice, 11-2.2 (Discovery and Procedure Before Trial), I request early disclosure of all Jencks/3500 material. I am making this request so that I will have adequate time to review the material, consider any discovery or Brady ramifications, resolve any issues involving disclosure in advance of trial, prevent any delay in court proceedings, and prepare to use the material in cross-examination. I also request that you diligently preserve all Jencks/3500 material.

For the purposes of this letter and any related litigation, "information" refers to all documentary, tangible, or oral material, including, but no limited to, statements by witnesses, whether recorded or otherwise memorialized or not, grand jury testimony, and reports of investigation or personal notes of investigators or government employees, including prosecutors. Such information is "known" to the government if known to you personally or known to any other prosecutor or law enforcement agent, which you could acquire actual knowledge of through the exercise of due diligence in responding to these inquires. If such information is disclosed to you, please disclose all supporting documents or objects as well as the names and addresses of all witnesses having knowledge of the information disclosed. If you elect not to disclose exculpatory information concerning the requests made herein until the day of trial, then please secure the presence of witnesses having such knowledge by subpoena so that delay will not be necessitated between the time of your disclosure and the time I seek to use or explore the ramifications of that information. Finally, the duty to disclose is a continuing one, stretching until the final disposition of this case.

It is my belief that the requested material is discoverable under the Federal Rules of Criminal Procedure and/or under pertinent case law. In the event that you are unable or

8

unwilling to provide the requested information, or if you disagree with any of the foregoing representations, please advise me by July 1, 2013 so that I may respond appropriately. If I have not heard from you by the date above, I will assume that my representations are accurate and I will rely on my representations in preparing for trial and file motions accordingly.

Sincerely,

Len Hong Kamdang
Attorney for Michael Kissi
Federal Defenders of New York, Inc
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718)407-7414

Jacqueline Newsome
Summer Legal Intern
Federal Defenders of New York

# DEFENDANT'S EXHIBIT

# C



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

JPN:EDP
F. #2013R00009

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 12, 2013

<u>By Email and ECF</u>

Len Kamdang, Esq.
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201

    Re: United States v. Michael Kissi
       <u>Criminal Docket No. 13-051 (MKB)</u>

Dear Mr. Kamdang:

    The government hereby provides notice, pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, that it intends to call translator Kobina Boateng Ampah to testify as an expert witness at trial in the above-referenced matter. Mr. Ampah's resume is enclosed.

    Mr. Ampah is a translator and member of the National Association of Judicial Interpreters and Translators. Mr. Ampah was born in Accra, Ghana, where he lived until he was 22 years old. He is a native speaker of Twi, Fante and English, and is fluent in Ga and Russian. Mr. Ampah received his degree from Kiev State University, in Kiev, Ukraine, where he focused on International Relations and Russian Language Instruction. He has lived in the United States since 1993 and receives employment assignments through Metropolitan Language Inc. as a translator of Russian, Twi, Fante and Ga.

    Mr. Ampah has been previously qualified as an expert on several occasions in the Eastern and Southern Districts of New York, as well as in the State Courts in New York. The government will provide you with information regarding cases in which Mr. Ampah has been qualified as an expert.

    The government anticipates that Mr. Ampah's testimony at trial will describe how he translated statements and communications contained on certain audio and video

recordings from Twi/Pigeon English into English.

    Please inform the government if you intend to call any expert witness at trial.
If you have any questions, please do not hesitate to contact me.


                                        Very truly yours,

                                        LORETTA E. LYNCH
                                        United States Attorney

                            By:     _____
                                        Erik D. Paulsen
                                        Assistant U.S. Attorney
                                        (718) 254-6135

cc:     Clerk of the Court (MKB) (by ECF) (without enclosures)


                                        2